MICHELLE G.,                     )
                                 )
               Plaintiff,    )
                                 )
                  v.          )        1:25CV142
                                 )
FRANK J. BISIGNANO,       )
Commissioner of Social Security,  )
                                 )
              Defendant.[1]   )

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Michelle G., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 9 (Plaintiff's Brief); Docket Entry 12 (Commissioner's Brief); see

---

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute as Defendant in this suit. Neither the Court nor the parties need take further action to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

<u>also</u> Docket Entry 13 (Plaintiff's Reply)).  For the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I.  PROCEDURAL HISTORY

Plaintiff applied for SSI on March 19, 2021 (Tr. 215-24), alleging a disability onset date of January 1, 2019 (<u>see</u> Tr. 215).[3] Upon denial of that application initially (Tr. 85-94, 106-10) and on reconsideration (Tr. 95-105, 112-14), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 117).  Plaintiff (represented by counsel), Plaintiff's mother, and a vocational expert ("VE") testified at the hearing.  (Tr. 45-84.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 24-44.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 11-16, 212-14), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1.  [Plaintiff] has not engaged in substantial gainful activity since March 19, 2021, the application date.

---

[2]  On consent of the parties, "this case [wa]s referred to the [undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein."  (Docket Entry 8 at 1.)

[3] Notwithstanding Plaintiff's alleged onset date of January 1, 2019, she lacked eligibility for SSI benefits until her application date of March 19, 2021 (<u>see</u> Tr. 215).  <u>See</u> 20 C.F.R. § 416.202 (explaining that a claimant remains ineligible for SSI benefits until date he or she files SSI application); 20 C.F.R. § 416.501 (stating that a claimant may not receive SSI benefits for any period that predates first month he or she satisfies eligibility requirements, which cannot precede application date).

2

. . .

2. [Plaintiff] has the following severe impairments: [g]eneralized anxiety disorder; lumbar degenerative disc disease; bilateral knee degenerative arthritis; right-handed carpal tunnel syndrome; chronic right foot fractures; asthma[;] obesity[;] and depression.

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except [l]ift and/or carry 20lbs occasionally and 10lbs frequently; sit for 6hrs, stand and/or walk for 6hrs; operate foot controls with the right foot occasionally; frequently handle, finger, and feel with right upper extremity. [Plaintiff] can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance never, stoop occasionally, kneel occasionally, crouch occasionally, crawl occasionally. [Plaintiff] can never work at unprotected heights, occasionally work near moving mechanical parts, in humidity and wetness, dust, odors, fumes, and pulmonary irritants, in extreme cold and in extreme heat; frequent work in vibration. [Plaintiff] can perform simple, routine tasks, and make simple work-related decisions; is able to interact with supervisors, colleagues, and the public frequently; can maintain concentration, persistence, and pace two hours at a time, but would be off-task 3 percent of time in an 8-hour workday in addition to regularly afforded breaks.

. . .

5. [Plaintiff] is capable of performing past relevant work as a mail clerk. This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity.

. . .

3

6. [Plaintiff] has not been under a disability, as defined in the [] Act, since March 19, 2021, the date the application was filed.

(Tr. 29-39 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro

4

v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

5

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the

---

[4] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the
(continued...)

claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.'  If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied."  Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled."  Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]."  Id. at 179.[6]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant  work; if so, the claimant does not qualify as disabled.  See id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the

---

[5] (...continued)
[Commissioner] . . . ."  Hunter, 993 F.2d at 35 (internal citations omitted).

[6]  "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

7

analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[7]

### B. Assignment of Error

In Plaintiff's first and only issue on review, she asserts that "[t]he [ALJ] erred as a matter of law as there is no logical bridge between the evidence and the RFC's arbitrary and conclusory limitation of 3% off task time." (Docket Entry 9 at 8 (all-caps font and block formatting omitted); see also Docket Entry 13 at 1-9.) In that regard, Plaintiff maintains that "[c]ourts within the Fourth Circuit have stated that, where an ALJ includes a percentage for time off task in the RFC, an explanation of the precise amount of time off task is critical" (Docket Entry 9 at 9), and that "the 'ALJ must explain and support that conclusion with substantial

---

[7] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

evidence'" (id. (quoting Berry v. Commissioner of Soc. Sec., No. 3:21CV240, 2022 WL 3354778, at *2 (W.D.N.C. Aug. 12, 2011) (unpublished))). Thus, Plaintiff argues, "[w]hile 'an ALJ is not required to determine a percentage of time off-task[,] . . . . where, as here, the evidence substantiates difficulty with sustained concentration and the ALJ renders a conclusion regarding a precise percentage [of off-task time], the ALJ must explain and support that conclusion with substantial evidence'" (id. at 10 (quoting Kane v. Commissioner, Soc. Sec. Admin., No. 17CV1252, 2018 WL 2739961, at *2 (D. Md. May 14, 2018) (unpublished))), "with reference to the record" (id. (citing Abdul K. v. Kijakazi, No. 21CV2434, 2022 WL 2789363, at *2-3 (D. Md. July 15, 2022) (unpublished))). In Plaintiff's view, "'[i]n the absence of explanation, the Court is left to pontificate on where the ALJ came up with the [three]-percent figure and why this limitation adequately accounts for Plaintiff's limitations[,]'" which "'guesswork [] Mascio and its progeny prohibit this Court from doing.'" (Id. (quoting Kennedy v. Berryhill, No. 3:18CV405, 2019 WL 3664936, at *4 (W.D.N.C. Aug. 6, 2019) (unpublished)).)[8]

---

[8] Plaintiff cites additional cases in the Fourth Circuit she contends remanded for inadequate explanations by the ALJs of time off-task percentages in the RFCs. (See Docket Entry 9 at 10-13 (citing Michelle A. v. Dudek, No. 24CV8, 2025 WL 948446, at *4 (D. Md. Mar. 28, 2025) (unpublished) (five percent), Armstrong v. Commissioner of Soc. Sec. Admin., No. 3:23CV124, 2024 WL 463311, at *2 (W.D.N.C. Jan. 4, 2024) (unpublished) (10 percent), recommendation adopted, 2024 WL 460262 (W.D.N.C. Feb. 5, 2024) (unpublished), Cross v. Kijakazi, No. 4:22CV4333, 2023 WL 10947229, at *4-6 (D.S.C. Sept. 20, 2023) (unpublished) (no more than five percent), recommendation adopted, 2024 WL 1349042 (D.S.C. Mar. 28, 2024) (unpublished), Beth Ann O. v. Kijakazi, No. 21CV1877, 2022 WL 3360277, at (continued...)

9

According to Plaintiff, the ALJ's above-described error does not qualify as harmless, because "[t]he evidence in the record shows it is possible Plaintiff could be off task more than 10% of the workday, which would be work preclusive." (Id. at 14 (block formatting omitted); see also id. at 17 (noting VE's testimony that, "if the individual were off task more than 10%, there would be no work available" (citing Tr. 81)).) In support of that assertion, Plaintiff contends that she might experience off-task time (A) "to recuperate after walking, standing, using stairs, or doing light lifting" due to shortness of breath, back pain, and leg pain (id. at 15 (bold font omitted)), (B) "due to panic attacks" which require her to "lay [sic] down for 15 minutes or longer" (id. (bold font omitted)), and (C) caused by "intermittent explosive disorder, hear[ing] voices, [] mood swings, . . . get[ting] into arguments[,]" and "depression [that] affects [her] energy level and motivation to complete tasks" (id. (internal quotation marks omitted)). For the following reasons, Plaintiff's arguments fall short.

---

[8] (...continued)
*3 (D. Md. Aug. 15, 2022) (unpublished) (eight percent), Keith L. v. Saul, No. 20CV930, 2021 WL 1723084, at *2 (D. Md. Apr. 30, 2021) (unpublished) (five percent), Bibey v. Saul, No. 1:19CV2690, 2020 WL 7694552, at *4 (D. Md. Dec. 28, 2020) (unpublished) (five percent), Cannon v. Berryhill, No. 1:18CV285, 2019 WL 7875158, at *5-6 (W.D.N.C. Dec. 23, 2019) (unpublished) (nine percent), recommendation adopted, 2020 WL 596944 (W.D.N.C. Feb. 6, 2020) (unpublished), Patricia W. v. Berryhill, No. 1:19CV9, 2019 WL 6790512, at *3 (D. Md. Dec. 12, 2019) (unpublished) (10 percent), Kilgo v. Saul, No. 3:18CV312, 2019 WL 3719609, at *4 (W.D.N.C. Aug. 7, 2019) (unpublished) (nine percent), Conary v. Berryhill, No. 2:18CV1228, 2019 WL 3216041, at *9 (S.D.W. Va. June 25, 2019) (unpublished) (no more than five percent), recommendation adopted, 2019 WL 3211268 (S.D.W. Va. July 16, 2019) (unpublished).

RFC measures "the most a claimant can do despite" any physical and mental limitations, Hines, 453 F.3d at 562; 20 C.F.R. § 416.945(a), and represents a claimant's "'ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis,'" i.e., "'8 hours a day, for 5 days a week, or an equivalent work schedule,'" Hines, 453 F.3d at 562 (emphasis omitted) (quoting Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996) ("SSR 98-6p")). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See id. at 562–63; 20 C.F.R. § 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy), see 20 C.F.R. § 416.967, and any non-exertional limitations may further restrict the claimant's ability to perform jobs within an exertional level, see 20 C.F.R. § 416.969a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination, see Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014); however, "the ALJ must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion," Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis,

11

quotation marks, and brackets omitted).  Here, despite the absence of an express discussion by the ALJ of the basis for the three percent off-task time limitation, no basis for remand exists, because the ALJ's decision nevertheless supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and his findings that Plaintiff's impairments (A) qualified as "severe" at step two of the SEP (Tr. 29), and (B) resulted in "moderate" limitation in her ability to concentrate, persist, and maintain pace ("CPP") (Tr. 31-32), but (C) did not cause her to incur time off-task greater than three percent of an eight-hour workday in addition to standard breaks (see Tr. 32).

The United States Court of Appeals for the Fourth Circuit recently affirmed (in an unpublished opinion) an ALJ's assignment of a specific percentage of off-task time in the RFC.  See Rebecca J. v. Kijakazi, No. 22-1531, 2023 WL 3970022, at *3 (4th Cir. June 13, 2023) (unpublished).  In Rebecca J., the ALJ determined that the plaintiff "'would be off task seven percent of the workday,'" Rebecca J., 2023 WL 3970022, at *2, due to her need to irrigate and steam her nose to alleviate symptoms from a perforated septum, see id. at *3.  The plaintiff "alleged that the ALJ . . . insufficiently accounted for the requisite frequency and duration of the nasal irrigation and steaming[,] . . . that her treatments would result in a loss of more than 15% productivity in

any given day[,]" and "that the ALJ failed to build a logical bridge from the objective evidence to his finding that [the] plaintiff d[id] not need to undertake treatments as frequently or for the duration that she claim[ed]."  Id.

The Fourth Circuit rejected that argument, and provided the following rationale:

> As the district court correctly observed, the record in this case is devoid of sufficient evidence, including opinions and treatment notes, demonstrating that Plaintiff would be off task more than seven percent of the day to account for her nasal treatment. No physician has prescribed this particular form of treatment, much less made any recommendation as to frequency or duration. And [the] plaintiff has produced no expert opinion suggesting that she has limitations greater than those accounted for in the RFC found by the ALJ.  The ALJ exhaustively considered the objective medical evidence and [the] plaintiff's subjective description of her symptoms and found that [the] plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  Specifically, the ALJ considered and explained that the objective evidence did not support [the] plaintiff's claim that her impairments prevent her from working because she has fatigue and needs to frequently steam her throat due to excess mucous, or her claim that she struggles to complete even routine daily tasks.

Id. (emphasis added) (internal quotation marks, citations, and brackets omitted).  Significantly, as the language emphasized above makes clear, the Fourth Circuit both (A) found the ALJ's discussion of the evidence sufficient to support the seven percent off-task finding, and (B) determined that the plaintiff had not proffered evidence supporting a greater amount of off-task time.  Id.

Very recently, another judge of this Court considered a plaintiff's challenge to an RFC finding that the plaintiff "could understand, remember, and carry out instructions for 95 to 100% of the time." Bradley N.A. v. Bisignano, No. 1:25CV21, 2026 WL 539874, at *4 (M.D.N.C. Feb. 26, 2026) (unpublished) (McFadden, M.J.). Notably, "[a]lthough the ALJ did not explain or set forth a formula as to why she chose a five percent off task finding instead of two percent or six percent," the Court found that such "lack of precision [wa]s not a reason to reverse the decision[, b]ecause[] the ALJ did not find evidence showing that [the plaintiff]'s ability to understand, remember, and carry out instructions was so compromised that he could not work[,]" i.e., "the ALJ found that [the plaintiff's] symptoms caused *some* time off task, but not a *disabling* amount of it." Id. (emphasis added) (citing Shaw v. Kijakazi, No. 1:20CV581, 2021 WL 3079905, at *9 (M.D.N.C. July 21, 2021) (unpublished), recommendation adopted, 2021 WL 6202788 (M.D.N.C. Aug. 23, 2021) (unpublished) (Osteen, J.)). The Court additionally found that "the ALJ . . . adequately supported her up to 5% off task finding by pointing to multiple lines of evidence including objective medical evidence, treatment history, [] daily activities, . . . [and] medical opinions," and that the plaintiff "failed to point to evidence that would compel a different outcome." Id. at 8 (emphasis added).

14

Similarly, here, although the ALJ did not <u>expressly</u> explain the reasoning behind his three percent off-task finding (<u>see</u> Tr. 32-38), the Court can nevertheless trace the path of the ALJ's reasoning in finding that Plaintiff's impairments caused her to experience off-task time for three percent of an eight-hour workday, i.e., that she experienced <u>some</u> limitation in her ability to remain on-task, but not <u>disabling</u> limitations, <u>see</u> <u>Shaw</u>, 2021 WL 3079905, at *9. The ALJ acknowledged Plaintiff's subjective reports of "low back pain that radiated at times into the right lower extremity," "shortness of breath with activity," "poor quality mood, low motivation, loss of pleasure in activities, and feelings of worthlessness," "anxious feelings and panic attacks," "mood swings, irritability, and [] b[eing] argumentative," as well as "limitations in . . . completing tasks" and "needing breaks to perform household chores." (Tr. 33.) The ALJ, however, also observed that Plaintiff could engage in the following daily activities:

> As for activities of daily living, [Plaintiff] testified and reported that she could perform personal hygiene, dress herself, and feed herself without difficulty. She stated that she could prepare small meals, perform household chores, shop in stores and online, and manage finances. She managed her medical care independently. [Plaintiff] reported that she was able to provide care for a minor child. She reported travelling [sic] out of state and had the ability to travel for vacation. She reported that she drove wherever she needed to go. She reported no difficulty with understanding or following verbal or written instructions. She reported spending time watching

15

> television, playing games on the computer, and surfing the internet.

(Id. (internal parenthetical citation omitted).) Plaintiff's wide range of daily activities provides support for the ALJ's finding that Plaintiff's impairments resulted in off-task time for three percent of a workday. See Bradley N.A., 2026 WL 539874, at *5 (noting that ALJ's reliance on the plaintiff's daily activities supported his off-task time limitation, because "the performance of th[o]se activities requires . . . remaining on task" (citing Medina v. Commissioner of Soc. Sec., 831 F. App'x 335, 36 (2d Cir. 2020))). Ultimately, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [] not entirely consistent with the medical evidence and other evidence in the record" (Tr. 34), and Plaintiff did not challenge that finding by the ALJ (see Docket Entries 9, 13). Accordingly, the ALJ's analysis of Plaintiff's subjective symptom reports supports the ALJ's off-task time limitation. See Rebecca J., 2023 WL 3970022, at *3 (rejecting the plaintiff's challenge to seven percent off-task finding in RFC, because "[t]he ALJ properly considered [the] plaintiff's ability to care for her personal needs and perform activities of daily living in evaluating the credibility of her subjective symptoms, . . . . and built an accurate and logical bridge from the evidence he recounted to his conclusion" (internal quotation marks omitted)).

16

The ALJ's discussion of the objective medical evidence further supports his off-task time limitation. Regarding Plaintiff's back and leg pain, the ALJ noted that "physical therapy records . . . revealed no loss of range of motion with extension, minimal loss of range of motion with side glide to the right and left and moderate range of motion with forward flexion," as well as "negative bilateral straight leg raise test [and] negative slump and clonus tests." (Tr. 34 (internal parenthetical citation omitted).) The ALJ further observed that "[p]hysical exams did not reveal sensory deficits in any extremity and [Plaintiff] retained normal strength in all extremities." (Id. (internal parenthetical citation omitted).) Concerning Plaintiff's shortness of breath, the ALJ remarked that "physical examinations during the period more often noted that [Plaintiff] denied respiratory problems during visits," "[Plaintiff] reported that her asthma was much improved with Symbicort, and that she had not used her rescue inhaler very much," "[p]roviders did not note any respiratory symptoms on exams," and "pulmonary function testing was unremarkable with normal lung volumes." (Tr. 35 (internal parenthetical citation omitted).) With respect to Plaintiff's mental impairments, the ALJ pointed out that, although "[m]ental status exams noted at times dysphoric, depressed, or anxious mood and affect[,] . . . at other times, [Plaintiff] was observed with a euthymic mood, or described as having a normal mood and affect," as well as that "providers did

17

not note impairments in thought content, thought process, memory, concentration, cognition, or orientation," and "[Plaintiff] was observed as appropriately dressed and groomed, and described as pleasant or cooperative." (Tr. 35-36 (internal parenthetical citation omitted).) Those findings additionally support the ALJ's determination that Plaintiff's impairments would cause <u>some</u> impairment, but not <u>disabling</u> impairment, in her ability to stay on task. <u>See</u> <u>Rebecca J.</u>, 2023 WL 3970022, at *3-4 (approving ALJ's seven percent off-task limitation that lacked an express explanation, where ALJ "exhaustively considered the objective medical evidence" and "built an accurate and logical bridge from the evidence he recounted to his conclusion [about the plaintiff's abilities]" (internal quotation marks omitted)); <u>Bradley N.A.</u>, 2026 WL 539874, at *5-6 (determining that ALJ's discussion of the medical evidence supported her up to five percent off-task limitation, "a finding which is legally correct, supported by substantial evidence, and susceptible to judicial review").

Furthermore, although Plaintiff contends that "[t]he evidence in the record shows it is <u>possible</u> [she] could be off task more than 10% of the workday, which would be work preclusive" (Docket Entry 9 at 14 (block formatting omitted), Plaintiff has not pointed to evidence that would have <u>compelled</u> the ALJ to find work-preclusive off-task time. In support of that assertion, Plaintiff contends that she might experience off-task time "to recuperate

18

after walking, standing, using stairs, or doing light lifting" due to shortness of breath, back pain, and leg pain. (Docket Entry 9 at 15 (bold font omitted).) However, Plaintiff bases off-task time arising from those impairments solely on her subjective complaints (and her mother's subjective reports) (see id. at 15-16 (citing Tr. 53, 58, 63-66, 69 (Plaintiff's hearing testimony), 251-67 (Function Reports from Plaintiff and her mother))), and the ALJ found Plaintiff's subjective symptom reports "not entirely consistent with the medical evidence and other evidence in the record" (Tr. 34), and specifically found, with regard to Plaintiff's "rather significant allegations regarding shortness of breath with almost any sort of exertion or activity despite medication," that "a review of the evidence did not suggest her condition was as severe or limiting as she alleged" (id. (internal quotation marks omitted)), findings that Plaintiff did not challenge (see Docket Entries 9, 13). Indeed, the ALJ clearly did not find that Plaintiff's lumbar and respiratory impairments required her to rest every 15 minutes, as the ALJ found Plaintiff remained able to "stand and/or walk for 6hrs" without an allowance for rests or alternating position. (Tr. 32.)

Plaintiff additionally argues that she would need off-task time "due to panic attacks" which required her to "lay [sic] down for 15 minutes or longer" (Docket Entry 9 at 15 (bold font omitted)) and "intermittent explosive disorder, hear[ing] voices,

19

[] mood swings, . . . get[ting] into arguments[,]" and "depression [that] affects [her] energy level and motivation to complete tasks" (id. (internal quotation marks omitted)). Again, Plaintiff primarily supports that allegation with her own (and her mother's) subjective statements (id. (citing Tr. 60, 62, 251-67)), but the ALJ found Plaintiff's subjective statements "not entirely consistent with the [] evidence" (Tr. 34), and specifically observed as follows:

> [Plaintiff]'s level of activity [] suggests that she was not as limited as [s]he implied. Examples included that she was providing some care to her nephew including driving him to school. She also managed her own medical care and finances. . . . [She] reported during the mental consultative exam that she did not stop working due to disability, but rather was fired for a violation of a workplace policy.

(Tr. 36 (internal parenthetical citation omitted).) Notably, Plaintiff did not challenge those findings by the ALJ. (See Docket Entries 9, 13.)

Nonetheless, Plaintiff maintains that her "testimony about her anxiety/depression symptoms including panic attacks, mood swings, irritability, hearing voices, and depression . . . is supported by medical evidence in the record." (Docket Entry 9 at 15.) In support of that assertion, Plaintiff points to the reconsideration-level state agency psychological consultant's statement that Plaintiff had a "history of hallucinatory experience, mixed emotions (anxiety and depressive reaction, mood swings, irritability, anger, fidgety), social avoidance and alleged pain"

20

(id. (citing Tr. 99)), as well as his moderate findings in the paragraph B criteria (id. at 16 (citing Tr. 98)), and his opinion that her mental symptoms "'would occasionally interfere with her ability for sustained concentration, persistence or for task completion'" (id. (quoting Tr. 102)). Those statements and opinions would not have compelled the ALJ to find work-preclusive levels of off-task time, because a "moderate" finding in the mental functional area of CPP in the paragraph B criteria meant that Plaintiff's ability to sustain CPP remained "fair," see 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00F.2.c (emphasis added), and, thus, did not equate to a disabling level of off-task time. Moreover, despite finding Plaintiff's mental symptoms would "occasionally interfere" with her ability to maintain CPP, the consultant also concluded that Plaintiff "would be able to complete tasks at an acceptable pace" (Tr. 102) and remained able to perform simple, routine, and repetitive tasks ("SRRTs") with no allowance for off task time (see Tr. 98).

Plaintiff additionally relies on the statements of consultative psychological examiner Janice L. McGilberry, LCMHCS, LPA ("LPA McGilberry") that Plaintiff "reported depressed symptoms 3-4 days/week, most of the day; sleep disturbances 2-5 days/week; irritability and argumentative 1x/week; distracted by extraneous stimuli; occasionally interrupts or intrudes on others; becomes distracted in conversations" (id. (citing Tr. 689-90)), as well as

21

LPA McGilberry's notation that Plaintiff "d[id] not appear to exaggerate or minimize her problems" (id. (quoting Tr. 691)). Again, those statements would not have compelled the ALJ to adopt work-preclusive off-task limitations, because LPA McGilberry clearly described Plaintiff's subjective reports of mental symptoms. (See Tr. 689-90 (reflecting Plaintiff's reports of mental symptoms under heading "History of Present Illness" (bold and all-caps font omitted)).) Significantly, Plaintiff glosses over the fact that LPA McGilberry's objective examination did not reveal CPP deficits (see Tr. 691-92 (documenting no "difficulties with . . . alertness," "adequate attention and concentration," and error-free serial 3s and mathematical calculations)) and, consistent with that, LPA McGilberry found that Plaintiff had the ability to maintain CPP to perform SRRTs without mention of off-task time (see Tr. 693).

Plaintiff further points to remarks by mental health providers regarding Plaintiff's mental symptoms such as panic attacks and angry blow-ups. (See id. at 17 (citing Tr. 495, 497, 501, 504, 506-07, 509-10, 719, 737-39).) Once again, Plaintiff's subjective reports form the basis of those providers' statements, as the providers did not indicate that they witnessed Plaintiff experiencing a panic attack or an angry blow-up and, beyond noting anxious and depressed mood and affect at times, those providers documented normal findings on mental status examinations. (See Tr.

22

494, 497, 500, 503, 506, 509, 512, 515, 519, 521, 524, 527, 530, 534, 718-19, 738-39.) Moreover, <u>no</u> provider of record has diagnosed Plaintiff with intermittent explosive disorder (<u>see</u> Tr. 301-1095), and Plaintiff and her mother have both denied that Plaintiff had problems getting along with others (<u>see</u> Tr. 256, 518, 691). Furthermore, so far as the record reflects, Plaintiff did not report "hearing voices" or any other type of auditory hallucination or psychotic symptom to <u>any</u> of her providers of record (<u>see</u> Tr. 301-1095), including LPA McGilberry (<u>see</u> Tr. 690) and consultative medical examiner Dr. Stephen Burgess (<u>see</u> Tr. 700-01), and she actually <u>denied</u> psychosis and hallucinations on two occasions (<u>see</u> Tr. 518, 690).[9]

In light of the foregoing discussion, Plaintiff has not shown that the record evidence <u>compelled</u> the ALJ to adopt a work-preclusive off-task time limitation in the RFC. <u>See</u> <u>Rebecca J.</u>, 2023 WL 3970022, at *3 ("[T]he record . . . is devoid of sufficient evidence, including opinions and treatment notes, demonstrating that [the p]laintiff would be off task more than seven percent of the day . . . ." (internal quotation marks omitted)); <u>Stitely v. Colvin</u>, No. 14-2302, 2015 WL 4621292, at *1 (4th Cir. Aug. 4, 2015)

---

[9] Although Plaintiff has, at times in the record, suggested she has attention deficit disorder ("ADD") and obsessive-compulsive disorder ("OCD") (<u>see</u> Tr. 71, 260, 266), <u>no</u> provider of record has diagnosed Plaintiff with those mental disorders (<u>see</u> Tr. 301-1095). In fact, LPA McGilberry <u>ruled out</u> ADD as a diagnosis based, in part, on Plaintiff's denials that she "often fail[ed] to give close attention to details," "often ha[d] difficulty sustaining attention in tasks," and "often ha[d] difficulty organizing tasks" (Tr. 690).

23

(unpublished) ("[The plaintiff] points to no overlooked evidence, aside from his own allegations, which the [ALJ] found not entirely credible, that would substantially aid his case." (emphasis added)); Bradley N.A., 2026 WL 539874, at *6 ("[The plaintiff] does not point to any other evidence that would compel greater limitations than those that the ALJ found. . . . [T]he ALJ pointed to more than substantial evidence showing why [the plaintiff] did not suffer disabling limitations in . . . staying on task. No more is required."); Welch v. Saul, No. 1:19CV189, 2020 WL 4586882, at *8 (W.D.N.C. Aug. 10, 2020) (unpublished) ("[T]he ALJ's time-off-task limitation is reasonable and supported by evidence in the record. A claimant has the burden to prove the extent of her functional limitations; it is not the ALJ's burden to prove a lack of limitations. In this case, [the p]laintiff did not meet the burden of proving further functional limitations." (internal quotation marks, citation, and brackets omitted)).[10]

---

[10] Even assuming the evidence Plaintiff described in her brief "shows it is possible [she] could be off task more than 10% of the workday" (Docket Entry 9 at 14 (emphasis added) (block formatting omitted)), "'[t]he substantial evidence standard presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts," and "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Bradley N.A., 2026 WL 539874, at *6 (some internal quotation marks and ellipsis omitted) (quoting Dunn v. Colvin, 607 F. App'x 264, 266 (4th Cir. 2015)). In Plaintiff's Reply, she asserts that her assignment of error raises "legal errors in the ALJ's decision" (Docket Entry 13 at 5), rather than the ALJ's failure to support his decision with substantial evidence, and, thus, that the "'zone of choice' doctrine" does "not apply" (id.). Plaintiff's attempt to reconfigure her issue on review as a claim of legal error falls short. Plaintiff has not argued the ALJ violated any statute, regulation, or SSA policy by including a specific time off-task percentage in the RFC. (See Docket Entries 9, 13.) Rather, she maintains that the ALJ failed to explain the off-task finding, i.e., that he did not point to substantial evidence to support the finding (see id.), and Plaintiff herself points to record evidence she

(continued...)

24

As discussed above, Plaintiff has relied on multiple cases outside of this district that remanded because the ALJs did not provide express discussions of the off-task time percentages in the RFCs.  (See Docket Entry 9 at 9-13 (citing Michelle A., Armstrong, Cross, Beth Ann O., Berry, Abdul K., Keith L., Bibey, Cannon, Patricia W., Kilgo, Kennedy, Conary, and Kane).)  As the Court in Bradley N.A. noted, most of those out-of-district cases predated Rebecca J., see Bradley N.A., 2026 WL 539874, at *7, which, although unpublished, signals the Fourth Circuit's approval of a specific off-task time percentage in the RFC that the ALJ did not expressly explain, but that the court could meaningfully review, given the ALJ's discussion of substantial evidence supporting the off-task limitation and the absence of evidence that compelled a different outcome, see Rebecca J., 2023 WL 3970022, at *3-4.

Moreover, judges in this district have long held that specific off-task time percentages in RFCs do not constitute grounds for remand so long as, like here, the ALJs provide substantial evidence to support the limitations.  See Bradley N.A., 2026 WL 539874, at *7 & n.7 (citing, inter alia, Doorey v. Kijakazi, No. 1:20CV673,

<hr>

10 (...continued)
believes supported work-preclusive off-task time (see Docket Entry 9 at 14-17). As such, the "zone of choice" doctrine remains applicable to Plaintiff's instant assignment of error.  See Rebecca J., 2023 WL 3970022, at *3-4 (treating the plaintiff's challenge to off-task time percentage in RFC as one involving substantial evidence and finding ALJ's decision supplied substantial evidence to support off-task finding); Bradley N.A., 2026 WL 539874, at *6 (noting that "zone of choice" doctrine permitted ALJ to find the plaintiff would remain off-task for up to five percent of the workday so long as ALJ supported off-task finding with substantial evidence).

25

Docket Entry 22 at 14-15 (M.D.N.C. Oct. 26, 2021) (Webster, M.J.) (five percent), recommendation adopted, slip op. (M.D.N.C. Nov. 16, 2021) (Schroeder, C.J.), Shaw, 2021 WL 3079905, at *8-10 (no more than ten percent), Link v. Saul, No. 1:19CV662, 2020 WL 5044038, at *9 (M.D.N.C. Aug. 26, 2020) (unpublished) (up to ten percent), recommendation adopted, slip op. (M.D.N.C. Sept. 10, 2020) (Biggs, J.), Manasrh v. Berryhill, No. 1:17CV1125, Docket Entry 15 at 16-20 (M.D.N.C. Dec. 13, 2018) (unpublished) (Webster, M.J.) (five percent), recommendation adopted, slip op. (M.D.N.C. Jan. 4, 2019) (Schroeder, C.J.)); see also Christopher S.S. v. O'Malley, No. 1:23CV341, Docket Entry 13 at 10-16 (M.D.N.C. June 24, 2024) (unpublished) (Webster, M.J.) (three percent); Wesley v. Kijakazi, No. 1:20CV364, 2021 WL 4129234, at *7-9 (M.D.N.C. Sept. 9, 2021) (unpublished) (no more than 10 percent), recommendation adopted, slip op. (M.D.N.C. Oct. 14, 2021) (Tilley, S.J.). Given the Fourth Circuit's ruling in Rebecca J. and the above-cited long line of cases from this district upholding specific off-task time limitations where supported by substantial evidence, the Court declines to follow the reasoning of the out-of-district cases cited by Plaintiff.

In sum, because the ALJ sufficiently explained the three percent off-task time limitation in the RFC to permit meaningful judicial review, Plaintiff's first and only issue on review fails as a matter of law.

26

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED,** and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 2, 2026

27